## LANCASTER v. FRENCH.

(Supreme Court, Appellate Division, First Department. February 9, 1900.)

CONTRACTS—PARTIES—EVIDENCE.

Plaintiff purchased an interest in corporate property sold at foreclosure, in his own name, but claimed that he purchased for himself and defendant's testator, jointly, who had offered to join therein. Plaintiff thereafter sold the interest at a profit, one-half of which was paid to and accepted by defendant; and, suits having been commenced against plaintiff and testator as shareholders in a corporation formed by such purchasers, testator employed counsel to prepare his defense, and never denied that he was interested in the purchase. *Held* sufficient to establish a prima facie case that testator was equally liable with plaintiff for obligations arising out of such purchase.

McLaughlin, J., dissenting.

Appeal from judgment on report of referee.

Action by Robert A. Lancaster against Amos T. French, as executor of the estate of Francis O. French, deceased. From a judgment in favor of defendant on the referee's report dismissing the complaint, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Robert L. Harrison, for appellant.

George W. Wickersham, for respondent.

PATTERSON, J. A disputed claim presented to the executors of the will of Francis O. French, deceased, was referred, under the statute; and the referee dismissed the claim on the merits, but, as his opinion would show, for the failure of proof to connect the testator with a contract out of which the plaintiff asserts a liability of Mr. French arose to him. The only question before us on the appeal relates to there being enough proof to establish an obligation or indebtedness of Mr. French to the plaintiff. The facts are as follows, viz.: Certain persons were interested in a property in Virginia known as the "Green Brier White Sulphur Springs." In January, 1880, that property was affected by a decree of foreclosure and sale. Messrs. Stuart, Camden, and Peyton entered into an arrangement by which the property was to be purchased on joint account; and they agreed to organize a corporation to take title, and to conduct business in connection with such property. It would appear that Mr. Camden's interest was a half, but that he subsequently disposed of a part of it to a Mr. Matthews, and another part to a Mr. Thompson. The agreement by which the three gentlemen first named undertook to purchase the property at the foreclosure sale provided that a corporation should be formed, with a capital of $100,000, of which $50,000 should be paid in when the company was organized, with the privilege of increasing the capital to $1,000,000; the three parties to hold a certain proportion of the stock and Mr. Camden to have the right and privilege of substituting some person, acceptable to his associates, to hold his interest, and some other person, also acceptable, to hold such portion of his stock as he might be willing to transfer. Mr. Stuart,

who was to be the nominal purchaser, agreed to sell the property to a company to be organized, upon certain conditions, and Mr. Camden agreed to guaranty, or cause to be guarantied, certain indebtedness due to Mr. Stuart on account of the property. Some time in 1881 Camden and Thompson, then owning a one-quarter interest in the property, entered into negotiations with Mr. Lancaster (the plaintiff here) for a sale of that interest to him; and on the 31st day of May, 1881, a sale was effected, its terms and conditions being set forth in a written agreement bearing date on that day, and executed between Camden, Thompson, and Lancaster. Mr. Lancaster was individually the purchaser, according to the terms of the agreement. His claim in this proceeding is that he purchased the property for himself and Mr. Francis O. French, and that although the agreement was executed in his name as an individual purchaser, and ostensibly he was the only purchaser, yet that purchase was made on joint account of himself and Mr. French, and that Mr. French was bound equally with himself to all the terms and conditions and obligations of that contract of purchase. Among those terms and conditions are the following, viz.: Mr. Lancaster became substituted in the place of Camden in the contract for the purchase of the property under the foreclosure, and in the organization of a corporation; and he agreed to cause Camden and Thompson, and each of them, to be relieved from all obligations for all debts of the company as they should mature, by providing for their payment and relieving those parties from all liability. He also agreed and bound himself to protect Camden, individually, and Camden and Thompson, from all guaranties, liabilities, and responsibilities of every kind whatever under the contract with Mr. Stuart, or any subsequent modifications thereof; to protect Camden from all guaranties upon the interest transferred to Matthews; and Camden and Thompson agreed to transfer all their interest to Lancaster, without recourse to them for future responsibility in any form in regard to the property; and said transfers were to be made in such manner as to fully substitute the said Robert A. Lancaster as to all rights of said Camden and Thompson in the company under said contract. The written agreement between Lancaster and Camden and Thompson then provides as follows:

"The object of this agreement being to substitute the said R. A. Lancaster to all the rights of the said Camden, and Camden and Thompson, in such contract, and in the company formed under the same, as if said R. A. Lancaster had been in the same from the beginning; and the said R. A. Lancaster, on his part, agreeing and hereby obligating himself to protect and fulfill all the obligations of the said Camden, and Camden and Thompson, and to save them harmless and acquit from all liabilities, as fully as if the said Robert A. Lancaster had been the original party to said contract, instead of the said Camden."

It will thus be seen that the effect of the transaction between Lancaster and Camden was to bring Mr. Lancaster in as an original party to the agreement for the purchase under the foreclosure decree of the property, and to subject him to the same liabilities and responsibilities as would rest upon Mr. Camden under that contract. It is made to appear in the proofs that, shortly after the

purchase by Mr. Lancaster of the Camden and Thompson interest, it was sold at a profit, and that profit was divided between Mr. Lancaster and Mr. French. Some time thereafter suits were brought in the courts of Virginia against Mr. Lancaster and Mr. French, based upon allegations of their liability as shareholders in a company organized under the original agreement of purchase at the foreclosure sale; that liability arising out of the failure of the corporation to comply with the statutes of Virginia concerning the payment in of capital. Judgments were recovered in those actions to a very large amount, and they were subsequently compromised by Mr. Lancaster, who paid on such compromise a sum of money, and his claim in this proceeding against Mr. French is for one-half of the amount thus paid.

There can be no question of Mr. Lancaster's liability, nor of the wisdom and good faith of the settlement and compromise he made of the judgments referred to. The question is whether he has connected Mr. French with the transaction in such a way as to bind his estate for one-half of the amount thus paid. That Mr. French entered into some arrangement with Mr. Lancaster by which he (Mr. French) was to be interested in the purchase is entirely clear. Mr. Peyton, one of the parties to the original agreement of purchase under the foreclosure decree, testified that, at one interview in the course of the negotiations in New York which led up to the execution of the contract between Mr. Lancaster and Mr. Camden, Mr. French was present, and declared that, if Mr. Lancaster should decide to buy the interest of Mr. Camden, he (French) would join Lancaster in the purchase, and that he left the matter entirely in Mr. Lancaster's hands, and that it was understood that Mr. Camden's interest was to be bought for what it had cost Mr. Camden; that it was to be a cash sale; and that Mr. Lancaster and Mr. French were to stand in the shoes of Camden. At that interview Mr. Lancaster had not fully determined whether he would buy, but as the result of other conversations, at which Mr. French was not present, Mr. Lancaster determined to buy, and a written contract was subsequently executed. With the execution of this contract Mr. French had nothing to do, but the evidence of Mr. Peyton is that Mr. French expressed himself as willing to enter into the transaction, leaving it to Mr. Lancaster to determine whether it should be entered into or not. That Mr. French knew that a contract was made is clear, because he accepted one-half of the profit made out of the transaction, and apparently had returned to him, by Mr. Lancaster's check, his contribution to the purchase. The position of the case, then, at this point, is that Mr. French expressed his willingness to become a party to the purchase with Mr. Lancaster, and that he knew Mr. Lancaster had made the purchase; and the extent of his interest is determined by his acceptance of one-half of the profit, thus showing that he was associated with Mr. Lancaster to the extent of one-half. But it is claimed that there is nothing in the proofs to show that Mr. French became connected with Mr. Lancaster in the purchase in such a way as to bind him to the conditions and stipulations Mr. Lancaster made with respect to the

assumption of the liabilities under which Mr. Camden rested by the terms of his original contract with Mr. Peyton and Mr. Stuart, and that there is nothing to show that Mr. French gave authority to Mr. Lancaster to enter into any such obligation to be binding upon him. We think the learned referee was mistaken in his understanding of the proofs upon that subject. It appears that suits were begun against Mr. Lancaster and Mr. French as shareholders in the Green Brier White Sulphur Springs Company, the corporation that was formed, and process was served on both of them in those suits. Mr. French employed a firm of lawyers in New York City to attend to those suits on his behalf, and he had previously retained counsel in Richmond, Va., to defend them. The Virginia lawyers were retained directly by Mr. French, who is thus shown to have known that it was sought to enforce against him some liability by reason of obligations assumed by Mr. Lancaster in connection with the purchase of Camden's interest. In a communication made by one of the counsel in Virginia to Mr. French's attorneys in New York, the grounds of the alleged liability of Mr. French are set forth, and the proper way of meeting the claims asserted in the actions is discussed. In none of the correspondence is there any suggestion that Mr. French was not bound with Mr. Lancaster to the liability asserted in those actions, if any such liability existed; and in Mr. French's own letters to his attorneys in New York, while leaving it to the exercise of their judgment to do what was best in defending the action, there is no intimation of any kind that he is not equally bound with Mr. Lancaster to respond to whatever liability may have been incurred under Mr. Lancaster's agreement to purchase the Camden and Thompson interest. Thus, we have evidence as to the original purpose of Mr. French to enter into the purchase, his acceptance of one-half of the profit arising on the purchase, and his undertaking to defend with Mr. Lancaster the actions brought upon relations established under the stipulations of the agreement which Mr. Lancaster made with Mr. Camden in buying his interest. Mr. French undertook to defend against a liability that could not have accrued otherwise than by his being associated with Mr. Lancaster under the terms of the agreement giving rise to Lancaster's liability.

These proofs were quite sufficient to make out a prima facie case in establishment of the claim asserted by Mr. Lancaster in this proceeding, and, as the defendant offered no evidence whatever, we think the referee was wrong in dismissing the complaint, and that the judgment should be reversed, and a new trial ordered before another referee, with costs to appellant to abide the event. All concur, except McLAUGHLIN, J., who dissents.